IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | 3:09-md-02100-DRH-PMF<br><br>MDL No. 2100 |

**This Document Relates to:**

*Megan McKenna v. Bayer Corporation, et al.*         No. 3:12-cv-11450-DRH-PMF

*Mara Morrison v. Bayer Corporation, et al.*          No. 3:13-cv-10614-DRH-PMF

### ORDER DENYING MOTION TO RECONSIDER[1]

Plaintiffs bring their motions under Federal Rules of Civil Procedure 59(e) and 60(b). "[A] Rule 59(e) motion 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence.'" *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (quoting FDIC v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986)). Relief under Rule 60(b) on grounds such as mistake, inadvertence, or excusable neglect is even more restricted and is "granted only in exceptional circumstances." *Eskridge v. Cook County*, 577 F.3d 806, 809 (7th Cir. 2009).

Plaintiffs contend the Court's orders of dismissal were premised on one or more factual mistakes and should be vacated. After careful review of the record,

---

[1] Plaintiffs Megan McKenna and Mara Morrison have filed identical motions for reconsideration of this Court's orders dismissing their cases for failure to comply with Section III of Case Management Order No. 79. Bayer submitted a combined response to both motions and the Court addresses both motions in this combined order.

the Court disagrees. Plaintiffs have failed to establish grounds for reconsideration. Accordingly, the motions are **DENIED.**

In August 2015, Bayer and a committee of plaintiffs' counsel appointed by this Court in cooperation with the state court judges in the Pennsylvania, New Jersey and California coordinated proceedings negotiated a settlement agreement to resolve claims involving alleged arterial thromboembolism ("ATE") injuries. On August 3, 2016, the Court entered Case Management Order 76 ("CMO 76"), the ATE Settlement Implementation Order (MDL 2100 Doc. 3786).

That same day, the Court entered CMO 79, the Non-ATE Case Resolution CMO. CMO 79 applies to cases, including the above captioned case, that are not eligible to participate in the ATE settlement. CMO 79 creates two separate tracks for cases subject to its provisions: (1) settlement negotiations on a fixed schedule under Section II of the CMO for venous thromboembolism ("VTE") cases in which *both* parties agree that further negotiations would be productive, and (2) retention and discovery obligations under Section III of the CMO for all other cases, i.e., VTE cases in which there is not an agreement that further negotiations would be productive and cases alleging injuries other than a VTE or an ATE.

Under Section II of CMO 79, any plaintiff "who believes additional efforts to settle a particular VTE case may be productive" had 60 days to notify Bayer, after which Bayer had 30 days "to respond with its view about whether additional settlement efforts would be productive." CMO 79 ¶ II.2. Section II's further requirements regarding negotiations apply only in a "case in which the parties

<u>both agree</u> that additional settlement efforts would be productive." *Id.* ¶ II.3 (emphasis added).

If the parties are not in agreement, then the case is subject to the requirements of Section III of CMO 79. Pursuant to Section III.2 of CMO 79, Bayer had 50 days to identify cases it believed were subject to the requirements of Section III of the CMO. <u>Section III.2 also instructed any plaintiffs who believe they should not have to comply with Section III to meet and confer with defendants and, if unable to reach an agreement, submit disputes to the Special Master within 21 days</u>. Sections III.3 and III.4 of CMO 79 then gave plaintiffs 120 days from the date of the order—i.e., until December 1, 2015—to comply with certain substantive requirements, such as sending preservation notices and producing certain documents and limited expert reports. Section III.5 of CMO 79 provides that plaintiffs who do not comply with their obligations under Section III of the CMO will be subject to a motion to dismiss with prejudice.

Plaintiffs contend the Court mistakenly concluded that they "received notice but failed to take action" and "did not dispute [their] classification[s]" under Section III of CMO 79. Accordingly, plaintiffs insist, the Court mistakenly applied Section III of CMO 79 to their claims. This is simply an attempt to rehash an argument already rejected by the Court. Further, the record, including the documents submitted by the plaintiffs on their motion to reconsider, reveals there was no mistake. The plaintiffs' claims were never subject to Section II of CMO 79.

3

As is set forth clearly in CMO 79, the negotiation provisions of Section II only apply to cases in which, after an exchange of positions, "the parties *both agree* that additional settlement efforts would be productive." CMO 79 ¶ II.3. In the above cases, the parties did not agree. On September 22, 2015, in accord with Section II.2, Bayer timely notified the plaintiffs' that it believed their cases were subject to the requirements of CMO 79 Section III. On September 30, 2015, plaintiffs responded stating that they disagreed and would like to proceed under Section II of CMO 79 with regard to five of their cases. That same day, Bayer responded stating as follows:

> Thanks for your email. We will treat this as your CMO 79 Section II submission. Accordingly, we will respond within 30 days as to whether we believe settlement efforts will be productive for these 5 cases.

(emphasis added). Bayer followed up on October 30, 2015, stating that it believed settlement efforts would be productive for *one* of the five cases. However, Bayer unequivocally stated that settlement efforts would *not* be productive for the remaining four cases, including the above captioned actions. Thus, as of October 30, 2015, the parties did *not* agree that further settlement negotiations would be productive. At this point, CMO 79 instructed the plaintiffs to "meet and confer with Bayer and, if unable to reach an agreement, bring the dispute to the Special Master within 21 days." The plaintiffs did not do this and, accordingly, were subject to the provisions of Section III of CMO 79.

Plaintiffs contend that their September 22, 2015 email demonstrates they took action and objected to their Section III classification. However, the

4

September 22, 2015 email merely constitutes the plaintiffs' initial notification that they believed negotiations would be beneficial. Under CMO 79, Bayer still had an opportunity to agree or disagree. Thus, as of September 22, 2015, the parties were still in the process of exchanging their positions. On October 30, 2015, Bayer emailed the plaintiffs and expressly *disagreed*. It is the October 30, 2015 email that triggered application of Section III. And, it is the plaintiffs' lack of action with regard to the October 30, 2015 email that the Court referenced in its dismissal orders. The September 22, 2015 email exchange relied on by the plaintiffs does not alter the plaintiffs' failure to take action with regard to the October 30, 2015 notification (either by complying with Section III of CMO 79 or submitting the matter to Special Master Randi Ellis).

Plaintiffs also argue that that defendant's September 22, 2015 agreement to treat her communications as a Section II submission removed her case from Section III's requirements. This argument is not well taken. Bayer agreed to treat the September 22, 2015 email as a Section II *submission.* It then expressly stated, as provided for in CMO 79, it would respond within 30 days regarding whether it agreed that the case should proceed under Section II. On October 30, Bayer responded and expressly stated that it *disagreed*. The Court also rejects the contention that the plaintiffs were required to "dual track" and comply simultaneously with both the negotiation provisions of Section II and the preservation and disclosure provisions of Section III.

Considering the above, the record reflects the parties did *not* agree that further settlement negotiations would be productive. Accordingly, the above captioned case was subject to the provisions of Section III of CMO 79 and was *not* subject to the negotiation provisions of Section II. There is no mistake and the plaintiffs have otherwise failed to establish grounds for reconsideration.

**IT IS SO ORDERED.**

**Signed this 17th day of March, 2016.**

Digitally signed by Judge David R. Herndon
Date: 2016.03.17 13:45:26 -05'00'

**United States District Court**

6